The Chief Justice
delivered the opinion of the Court:
On the 17th day of February, 1885, Letters Patent No. 312,470 were issued to William A. Hoeveler and Thomas J. McTighe. On the 28th day of September, 1885, the patentees filed this application for a reissue. The invention is for a system for conveying and distributing natural gas.
*108 The applicants for reissue claimed and still claim that through the mistake and misunderstanding of their solicitors the patent issued without including a valuable feature of the invention, and the application for reissue is to correct the claimed mistake, and having been made within eight months after the issuing of the original patent it is claimed no laches can be imputed to them.
The reissue was refused by the primary examiner on the ground that the applicants had abandoned their right to the subject matter of the claims sought to be obtained by the reissue. The examiner found (i) that said claims were in substance the same as a claim made in the original application, and which upon rejection was erased by the solicitor in charge of the case; and (2) that such act by the agent amounts to an abandonment by the principal of the subject matter of the claim so erased. Issue was taken on both these propositions, and the matter carried by appeal to the Commissioner of Patents.
The result of the appeal to the Commissioner was, that the adverse decision of the lower tribunals was overruled and it was decided that the claim of the patentees, that by mistake of their solicitors a material patentable claim had been omitted from the patent, was true, and the appellants were declared to be lawfully entitled to the reissue as prayed.
This decision was made April 10, 1888, by Assistant Commissioner Vance, and appellants claim was a final decision not subject to review by the successor of the Commissioner who made it. It is claimed that the appellants are yet under this decision entitled to a patent, and that one would have issued to them at once but that an interference was found to exist with other claimants of the same invention, which interference was hotly contested and was finally decided by Commissioner Mitchell, the successor of the Commissioner who decided, Hoeveler and McTighe’s appeal on the 15th day of July, 1890, in favor of Hoeveler and McTighe.
It is claimed by the appellants that it then became the duty of Commissioner Mitchell, to reissue the patent to them, *109 instead of which he, on March 26, 1891, sua sponte, opened the decision of his predecessor before mentioned as rendered April 10, 1888, and upon the same state of facts but with a different view of the law reversed the same.
From the latter decision, Hoeveler and McTighe appealed to this court. The appellants contend that Commissioner Mitchell could not lawfully reopen the final decision -of his predecessor, Acting Commissioner Vance, set it ’aside and order a different result upon the same state of law and facts.
It appears from the record that when the interferences were declared the adversaries of Hoeveler and McTighe moved to dissolve the same on the ground that the latter were estopped to claim the subject matter involved. This raised again the whole question previously passed upon by the Commissioner in his,decision of April 10, 1888.
These motions were referred by the examiner to Commissioner Hall, and it is said, were elaborately argued before him.
On reconsideration of the whole matter, Commissioner Hall seems to have affirmed the decision of the Assistant Commissioner of April 10, 1888, on the 28th day of- September, 1888, in these words:
“The examiner is instructed to proceed in considering the application of Hoeveler and McTighe in conformity with the decision of the Assistant Commissioner. Should Hoeveler and McTighe finally prevail in these interferences, the examiner is directed to call the attention of the Commissioner in person to the application before passing the same to issue.” ,-
From this paper it appears that Commissioner Hall examined personally the grounds of the decision of the Assistant Commissioner; for the purpose of ascertaining, as the law and rules require before declaration of an interference, (Rule 95) whether the parties had the right to make the claims involved; and it further seems that he affirmed the decision and directed that it be followed. It also appears that for some purpose which he did not deem necessary to *110 express, he thought it proper and expedient to direct that his attention be called to the application in the event the interferences should be decided in favor of Hoeveler and McTighe before issuing a patent. Just what may have been the purpose in giving the latter direction must remain a matter of conjecture.
The appellants say it can only mean that Commissioner Hall desired to keep his eye on the case so that he might see that the subsequent proceedings relating to interferences were correct, while Commissioner Mitchell seems to have construed it to mean an intention on the part of Hall to reserve the right to reconsider the decision of Assistant Commissioner Vance and as an authority to him (Mitchell) to do so as Hall’s successor.
Rule 95 of the Patent Office is as follows:
“ Before the declaration of interference all preliminary questions must be settled by the primary examiner, and the issue must be clearly defined, the invention which is to form the subject of the controversy must be decided to be patentable, and the claims of the respective parties must be put in such condition that they will not require alteration after the interference shall have been finally decided, unless the testimony adduced upon the trial shall necessitate or justify such change.”
Indeed, it does not seem to be contended that Assistant Commissioner Vance had not full authority to make the decision he did, but it is contended by counsel for the appellee that his decision was wrong, and that Commissioner Mitchell had the power to open, review and reverse it.
We have thus presented to us the question as to the power of an executive officer of one administration to reverse a decision of his predecessor of a former administration.
It seems to be well settled that where a matter is intrusted to the adjudication of the head of a department or an executive officer of the government, to be determined by him, his decision cannot be reopened, set aside, and a different result ordered by his successor, except for fraud, clerical *111 error apparent on the lace of the proceedings, or newly discovered evidence presented within a reasonable time and under such circumstances as would be a sufficient cause for granting a new trial in a court of law.
This doctrine has been maintained by numerous opinions of the Attorneys General.
Mr. Wirt, in an opinion given to the Secretary of the Navy in 1825, said:
“ Each administration has already as much as it can do in the current business which belongs to it; but if to this is to be superadded the'burden of reviewing the acts of preceding administrations, in which individuals may suppose themselves to have been aggrieved, it is manifest that the burden will become immediately insupportable. Hence, I have understood it to be a rule prescribed to itself by each administration to consider the acts of its predecessors conclusive as far as the executive is concerned.” 2 Op. Atty. Gen., 9.
Attorney General Taney, in 1831, declared that a final decision, upon a knowledge of all the facts, made by an officer authorized to decide on claims against the government, was binding upon and not liable to be opened and reversed by. his successor in office, Id., 465, and the principle was approved by Attorney General Nelson in 1844, 4 Id., 341, and Attorney General Toucey in 1848, 5 Id., 30.
Mr. Reverdy Johnson, in 1850, ruled upon the authority of the case of the United States vs. Bank of the Metropolis, 15 Peters, 401, that the decision of the Secretary of the Treasury, while the Land Office belonged to his Department, was res judicata, and “ whether right or wrong,” could riot be overruled by his successor, the Secretary of the Interior. 5 Op. Atty. Gen., 244.
The same Attorney General, in another opinion, 5 Id., 124, said:
“If the decision pronounced is quasi judicial; if the head of a department is by law made the'judge of the claim, to *112 decide upon its existence and its extent, and his decision is erroneous, it is equally conclusive, whether this error be from a misconception of the facts or the law.”
To this effect Attorney General Johnson again laid down the law in Sibbald’s case, 5 Id., 177, when he said:
“The questions submitted to your predecessor by the resolution of 1846 were combined questions of law and fact. Over each his jurisdiction was made complete and exclusive * * * It necessarily follows that his decision upon all matters of fact connected with the claim is as final as it is upon all questions of law involved in it. There is no power in his successor to review his decision upon the grounds of error as to the one or the other. It has more than once been judicially held that decisions of this character are final. The safety of the Government and the desired, certainty of the law alike establish the soundness of the doctrine. Errors in calculation may be corrected, but no errors of decision, upon controverted facts. As to these the matter is past relief. The decision stands as the law of the case, ever binding and conclusive, until Congress thinks proper, by law, to reopen it. I answer your first question, therefore, by saying that it is not your right, and, of course, not your duty, to review the decision of your predecessor upon the ground assumed in the inquiry.”
To the same effect are the opinions of Mr. Black, 9 Id., 34; Mr. Bates, 10 Id., 225; Mr. Stanbery, 12 Id., 169, 356; Mr. Hoar, 13 Id., 33, 326; Mr. Akerman, 13 Id., 387; Mr. Bristow, 13 Id., 456; Mr. Williams, 14 Id., 275; Mr. Devens, 15 Id., 316, 425; 16 Id., 489.
The rule is stated by Attorney General Devens in the following language:
“According to a well settled rule of administrative law, often mentioned with approval by the Attorneys General, the decision made by the former secretary in 1875 must be regarded as binding upon his successor, the present secretary,' unless it shall appear to be founded upon a mistake of fact, arising from error of calculation, or unless new and *113 material evidence since discovered is produced, which, had the same been before the department when the decision was made* would have led to a different result. Except under the circumstances just stated, viz., of mistake arising from error of calculation, or the production of new and material evidence, the present secretary would not be at liberty to disturb or review the decision of his ^predecessor,” 15 Op. Atty. Gen., 425.
The Court of Claims has often affirmed the same doctrine, Lavalette’s case, 1 Ct. Cls. R., 149; McKee’s case, 12 Id., 504; Hodge’s case, 20 Id., 352; State of Illinois’ case, 20 Id., 342; Day’s case, 21 Id., 264; Rollin and Presbrey vs. U. S., 23 Id.; 123.
Chief Justice Richardson, in the case of Rollin and Presbrey vs. U. S., 23 Ct. Cls., 123, stated the doctrine as follows:
“It has long been held in the Executive Departments that when a claim or controversy between the United States and individuals therein pending has once been fully considered and final action and determination had thereon by an executive officer having jurisdiction of the same, it cannot be reopened, set aside, and a different result ordered by any successor of such officer, except for fraud, manifest error on the face of the proceedings, such as a mathematical miscalculation or newly discovered evidence, presented within a reasonable time, and under such circumstances as would be a sufficient cause for granting a new trial in a court of law.”
The late Senator David Davis in reporting the opinion of the Judiciary Committee of the Senate uses the following language (see Jackson’s case, supra):
“ The principle which has been so ’often decided, that the final decision of a matter before the head of a department is binding upon his successor when no material testimony is afterwards discovered arid produced is now entitled to be regarded as a settled rule of administrative law.”
In the United States vs. The Bank of the Metropolis, 15 Peters, 390, the third clause of the syllabus is as follows:
*114 “ The head of a department has not a right to review the decision of his predecessor, allowing a credit, except to correct some error of calculation; if he is of the opinion that the allowance was wrongful, he must have a suit brought.” In the same case, pages 400-401, Mr. Justice Wayne delivering the opinion of the court says: “The third instruction asked the court to say, among other things, if the credits given by Mr. Barry were for extra allowances, which 'the said Postmaster General was not legally authorized to allow, then it was the duty of the present Postmaster General to allow such item of credit. The successor of Mr. Barry had the same power, and no more than his predecessor, and the power of the former did not extend to the recall of credits or allowances made by Mr. Barry, if he acted within the scope of official authority given by law to the head of the department. This right in an incumbent of reviewing a predecessor’s decisions, extends to mistakes in matters of fact arising from errors in calculation, and to cases of rejected claims, in which material testimony is afterwards discovered and produced. But if a credit has been given or an allowance made, as these were, by the head of the department, and it is alleged to be an illegal allowance, the judicial tribunals of the country must be. resorted to, to construe the law under which the allowance was made, and to settle the rights between the United States and the party to whom the credit was given. It is no longer a case between the correctness of one officer’s judgment and that of his successor.”
See, also, United States vs. Stone, 2 Wallace, 535, where Mr. Justice Grier says: “ The patent is but the evidence of the grant and the officer acts ministerially and not judicially. But one officer of the Land Office is not competent to cancel or annul the act of his predecessor.”
It appears in the case of Stephen Hall (7 O. G., 559, and 8 Id., 46) that Commissioner Leggett in his return to the rule as cause for his action, said: “First, my predecessor had evidently deliberately decided that a patent could, not be granted, and under the practice in all the departments *115 which, if not statutory, has the force of law, I am not at liberty to review his decision.” And it further appears that Commissioner Duell, the successor of Leggett, said with reference to the rule referred to by his predecessor, “ I acknowledge the force of the rule in those cases where a 'final adjudication upon all the facts has been had.”
The position of the counsel who filed a brief for the Patent Office, in relation to the authority of Commissioner Mitchell to reopen and reverse the decision of Assistant Commissioner Vance, is thus stated in his brief.
“ But the appellants urge that the Commissioner erred and exceeded his discretionary powers in rehearing the case and refusing this reissue application when it had already been favorably acted upon by his immediate predecessor in office.
“The record in the case shows that upon the original hearing for a reissue, the thlen Assistant Commissioner Vance decided in favor of the applicants.
“That Commissioner Mitchell after his accession to office, reopened the case, and upon hearing, reversed his predecessor’s action, and refused the patent.
“It is difficult to see upon what grounds the appellants can successfully urge this point here.
“ Cases in the Patent Office are heard by the Commissioner of Patents, and his individuality is not a question of moment in an appeal before this court.
“ Constructively the Commissioner of Patents is always the same person. ’
“ If for good and sufficient cause, in his opinion, the interests of the public demand that a case shall be reheard, it is within the powers conferred upon him by statute to order a rehearing, and if he finds it necessary, reverse the earlier decision.
“ It appears from the record in this case that there was sufficient cause.
“ The action of Commissioner Hall — who was the immediate superior of Mr. Vance — in ordering that the *116 case be submitted to him in person before it passed to issue, was, in Mr. Mitchell’s opinion, binding upon himself as Mr. Hall’s successor. It is not necessary to go into that matter here.
“The jurisdiction conferred upon this court is to revise such action of the Commissioner, affecting the merits of the invention in controversy, as the court shall deem necessary upon a proper hearing.
“We respectfully submit that matters of Patent-office practice, and questions arising thereunder which have no bearing on the merits of the case appealed are clearly not reviewable by this court.
“The sole question is upon the merits of the appellant’s case, and upon the justice or the injustice of the Commissioner’s decision in refusing them a patent in view of the matters of law and fact which the record discloses.”
Neither statute or other authority is cited in support of the position which counsel assumes, viz.: that Commissioner Mitchell had the rightful power to reopen and reverse the decision of Assistant Commissioner Vance, nor are we furnished with reasons or arguments in favor of such a power beyond what appears in the foregoing extract from the brief.
It appears to us that the authorities before cited are applicable to the question of the power of Commissioner Mitchell to make this order of reversal. The fact that the original order in favor of reissue was made by the then Assistant Commissioner does not affect the question, for it appears that the decision of the Assistant Commissioner is of the same dignity and authority as the Commissioner, no appeal lying from the former to the latter and no supervisory power over the decisions of the assistant is invested in the Commissioner more than over his own. In other words the decision of the assistant is that of the Commissioner.
Whatever may be supposed to have-been the purpose of Commissioner Hall in his order to the examiner of Sep *117 tember 28, 1888 to call his attention to the case before issue, it is clear to us, that he could not thereby invest himself or his successor with a power to rehear the question of the right of Hoeveler and McTighe to a reissue which the law would not otherwise confer.
Aside from the principle of law which we have considered applicable to all of the departments of the government as to the power of an officer to set aside or annul the action of his predecessor, rule 139 of the Rules of Practice in the Patent Office is as follows: “139. Cases which have been deliberately decided by one Commissioner will not be reconsidered by his successor except in accordance with the principles which govern the granting of new trials.”
Inasmuch as it is not claimed that Commissioner Mitchell had facts before him which were not before Assistant Commissioner Vance, nor that there was not a full hearing upon the facts and law, before the latter, nor is it claimed that there was fraud practised in procuring the decision by Vance, we cannot perceive what grounds were before Commissioner Mitchell requiring him sua sponte to review and reverse the former decision. None are disclosed by the record. It is intimated by counsel for the appellee that upon appeal this court cannot consider the question of the power of Commissioner Mitchell to reverse his predecessor because our power under the law “ is to revise such action of the Commissioner affecting the merits of the invention in controversy, as the court shall deem necessary upon a proper hearing.” Before Commissioner Mitchell could decide that the appellants were not entitled to a reissue he was compelled to set aside the order of Commissioner Vance, both of which things he did in one order, which is the order appealed from. Without reversing the order of Vance he had but one duty which he could perform, and that was to reissue the patent. Without doing so he proceeded without authority of law to remove the obligation to reissue resting on him by reversing the decision that the invention was patentable and meritorious and then deciding that it was not *118 patentable or meritorious; and yet counsel gravely suggests that the order of reversal does not affect the merits of the invention. We think further comment on this point unnecessary. We may remark, however, that the statute which provides for an appeal to this court from the decision of the Commissioner limits our power of revision to the “points set forth in the reasons of appeal.” The second point in appellants’ reasons of appeal is that Commissioner Mitchell erred in reopening and reversing the final decision of his predecessor. We are unanimously of the opinion that the record does not disclose any ground sufficient in law to authorize Commissioner Mitchell to make the order of March 26, 1891, reversing the order of Assistant Commissioner Vance of April 10, 1888, and thereupon deciding that the appellants were not entitled to a reissue of the patent. We therefore order that the said order of Commissioner Mitchell of March 26, 1891, be set aside and the said order and decision of Assistant Commissioner Vance be restored in full force and effect and the case remanded to the Commissioner of Patents for further proceedings.
Counsel have presented us with an elaborate argument with citations to numerous authorities both pro and con upon the questions involved in the hearing before Assistant Commissioner Vance which ultimated in his decision of April 10, 1888, but inasmuch as that order and decision is not before us on appeal for revision nor in any way except as we have already indicated, we are not authorized to express any opinion, nor would it be appropriate that we should, upon the merits of the controversy involved in that decision.